March 25, 2026

**Supreme Court**

No. 2025-156-Appeal.
(PJ 24-746)

In re DDH.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re DDH.                    :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  In the Family Court, the petitioner, Zoila Amanda Barnica Rodriguez (Rodriguez), filed a petition seeking temporary custody of her nephew, DDH, as well as an order for special findings of fact (the petition). Critically, although the petition was filed before DDH's eighteenth birthday, it was not heard until after DDH attained the age of eighteen.  The Family Court concluded that it was without subject-matter jurisdiction.

This case came before the Supreme Court pursuant to an order directing petitioner to show cause why the issues raised in this appeal should not be summarily decided.  After examining the memoranda and arguments presented, we conclude that cause has not been shown and proceed to decide the appeal at this time.  For the reasons set forth herein, we affirm the order of the Family Court.

- 1 -

At the outset we recognize the unusual posture of this matter. In the Family Court, as well as before this Court, there is no party opposing temporary custody. Despite the absence of such a dispute, it is axiomatic that a court must ensure that it maintains subject-matter jurisdiction, and when necessary, raise the issue *sua sponte*. *See Mill Road Realty Associates, LLC v. Town of Foster*, 326 A.3d 1085, 1088 (R.I. 2024). After dutifully assessing its subject-matter jurisdiction, the Family Court dismissed the petition. Accordingly, we glean the relevant facts from the petition, as well as from documents (the authenticity of which are not contested), official public records, and documents sufficiently referenced in the complaint. *See Montaquila v. Flagstar Bank, FSB*, 288 A.3d 967, 971 (R.I. 2023) (discussing "a narrow exception" for documents outside the complaint that may be considered on a motion to dismiss). We assume the facts articulated in the petition are accurate. *Id.*

DDH was born in Guatemala on February 18, 2006. On or about March 5, 2023, DDH crossed the border into the United States, near Eagle Pass, Texas. Upon entry into the United States, the Department of Homeland Security declared DDH to be "an alien present in the United States," not having been admitted or paroled, and DDH was issued a notice to appear at a date and time to be determined. On April 1, 2023, the Office of Refugee Resettlement released DDH to the sponsorship

care, control, and custody of his maternal aunt, Rodriguez; and, since that date, DDH has resided with Rodriguez in Central Falls, Rhode Island. On January 22, 2024, the City of Central Falls Probate Court granted guardianship of DDH to Rodriguez; and subsequently, on February 12, 2024, Rodriguez filed in the Family Court the petition that is at the epicenter of this appeal.

The petition alleged that DDH had been neglected and/or abandoned by his biological parents and requested that the Family Court grant Rodriguez temporary custody and issue an order declaring certain special findings of fact. The petition explicated that Rodriguez intended to file a Special Juvenile Immigration petition (immigration petition) with the United States Citizenship and Immigration Services and that the immigration petition would allow DDH to obtain a favorable immigration classification in an effort to obtain lawful status for permanent residency. We are advised that the immigration petition would be predicated upon an order from an appropriate juvenile state court—in this case, the Family Court— declaring certain special findings of fact. *See* 8 U.S.C. § 1101(a)(27)(J).

On February 14, 2024, days before DDH turned eighteen years old, Rodriguez appeared before a magistrate of the Family Court.[1] Although there is no

---

[1] In accordance with our precedent, DDH turned eighteen years old on the day before the anniversary of his birth. *See In re Edward*, 441 A.2d 543, 544 (R.I. 1982) ("Since Edward was born on May 17, 1962, he attained the age of eighteen on the first moment of May 16, 1980, the day before the anniversary date of his birth.").

record of that initial proceeding, a transcript from a subsequent hearing reveals that at the February 14, 2024 proceeding, Rodriguez requested a continuance because the summons and the petition had not been served upon respondents, DDH's biological parents. In this respect, the record reflects that on February 19, 2024, DDH's biological parents signed separate affidavits; and, on February 20, 2024, both affidavits were filed with the Family Court. Each affidavit indicated that DDH's biological parents entered their appearances, *pro se*; that they had no objection to the custody matter proceeding in their absence; and that they consented to the relief requested by Rodriguez. On February 21, 2024, Rodriguez appeared before the magistrate and again requested a continuance.[2] The magistrate granted the continuance, and the matter was rescheduled for March 13, 2024.

During the March 13, 2024 hearing, the magistrate observed that DDH had attained the age of eighteen and that therefore, the Family Court lacked subject-matter jurisdiction over this petition. In dismissing the petition, the magistrate emphasized that service of process had not been effectuated upon the biological parents until February 19, 2024 (the date the affidavits were signed), and that the Family Court's jurisdiction over juveniles who had not been adjudicated

---

[2] We are advised by Rodriguez's counsel that during the February 21, 2024 hearing, the magistrate requested a memorandum of law concerning the Family Court's subject-matter jurisdiction in light of DDH having reached the age of eighteen, as well as the authority of the Family Court to enter an order *nunc pro tunc*, to the filing of the petition on February 12, 2024.

terminates when the child becomes eighteen years old.  Accordingly, the magistrate determined that the Family Court lacked subject-matter jurisdiction to adjudicate the petition and further declared that the Family Court had no authority to issue an order *nunc pro tunc* to February 12, 2024.

Rodriguez appealed the magistrate's decision to the Chief Judge of the Family Court (Chief Judge), who, in due course, denied and dismissed the appeal. *See* R. Dom. Rel. P. 73(a).  In so doing, the Chief Judge concurred with the magistrate's determination that on March 13, 2024, DDH was more than eighteen years old and that, therefore, the Family Court lacked subject-matter jurisdiction.  Rodriguez filed this appeal.  In light of DDH's youth and circumstances, and cognizant of the environment in which this appeal arose, we expedited our consideration.  Although we are not faced with an adversarial proceeding, because of the important public policy concerns raised, we have exercised our discretion to decide this appeal.

**Standard of Review**

"This Court consistently has declared that 'a claim of lack of subject matter jurisdiction may be raised at any time.'" *Sidell v. Sidell*, 18 A.3d 499, 504 (R.I. 2011) (quoting *Long v. Dell, Inc.*, 984 A.2d 1074, 1078 (R.I. 2009)).  "Because subject-matter jurisdiction is an indispensable ingredient of any judicial proceeding, it can be raised by the court *sua sponte*." *Id.*  "We review '*de novo* whether a court

- 5 -

has subject-matter jurisdiction over a particular controversy.'" *Id.* (quoting *Long*, 984 A.2d at 1078). This Court also examines issues involving statutory construction *de novo*. *Id.*

**Analysis**

We have repeatedly recognized that "[t]he Family Court is a legislatively created court of limited jurisdiction, and its powers are thus restricted to those that are conferred upon it by the General Assembly." *Sidell*, 18 A.3d at 504. "The Family Court's jurisdiction may not be extended by implication, nor may the question of subject-matter jurisdiction be waived by the parties." *Id.*

In *In re Edward*, 441 A.2d 543 (R.I. 1982), this Court examined the subject-matter jurisdiction of the Family Court in the context of a delinquency petition. *See In re Edward*, 441 A.2d at 543-44. After reviewing the statutory authority of the Family Court, and specifically its exclusive jurisdiction of children "under eighteen (18) years of age," we recognized that "the subject-matter jurisdiction of the Family Court depends on whether [the respondent] was a 'child' upon the date when the alleged offense took place." *Id.* at 543 (quoting G.L. 1956 (1981 Reenactment) § 14-1-3(C)). Because the respondent turned eighteen years of age on the date the alleged offense occurred, we concluded that the Family Court lacked subject-matter jurisdiction over the delinquency petition. *See id.* at 544. Here, although we are faced with a petition seeking the temporary custody of a

child, and not the delinquency of a child, the statutory framework and this Court's analysis are similar.

At the time of the hearing on March 13, 2024, the General Assembly had conferred upon the Family Court the exclusive jurisdiction concerning, *inter alia*, "all motions for allowance, alimony, support and custody of *children* * * *." G.L. 1956 § 8-10-3 (emphasis added). The term "[c]hild" was defined as "a person under eighteen (18) years of age." Section 14-1-3(3). Because DDH was born on February 18, 2006, and was more than eighteen years old on March 13, 2024, at the time of the hearing, DDH clearly was no longer "a person under eighteen (18) years of age." *Id.* Accordingly, the Family Court properly determined that it lacked subject-matter jurisdiction to adjudicate the petition.

To be sure, Rodriguez maintains that, upon filing the petition on February 12, 2024, the Family Court acquired subject-matter jurisdiction, which, she contends, could not be divested based upon the occurrence of subsequent events. We disagree. As noted, "[t]he Family Court is a legislatively created court of limited jurisdiction, and its powers are thus restricted to those that are conferred upon it by the General Assembly." *Sidell*, 18 A.3d at 504. We reiterate that in creating the Family Court, the General Assembly authorized it "to hear and determine * * * all motions for allowance, alimony, support and custody of *children* * * *." Section 8-10-3(a) (emphasis added). Simply stated, at the time of the March

- 7 -

13, 2024 hearing, DDH was no longer a "[c]hild," as that term was defined. *See* § 14-1-3(3).

In addition to our interpretation of the statutory framework, as it existed on March 13, 2024, Rodriguez's argument would render the current—and recently amended—statutory framework nugatory. It is well established that "[t]he Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible." *In re B.H.*, 194 A.3d 260, 264 (R.I. 2018) (brackets omitted) (quoting *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009)).

Here, § 14-1-5.2, entitled "Expanded jurisdiction for special immigrant juvenile status findings," became effective on July 1, 2025. In relevant part, this amendment states:

> "The [F]amily [C]ourt shall have jurisdiction to make factual findings under this section and to award legal custody or appoint a legal guardian of a person *under the age of twenty-one (21) years to be used solely in conjunction with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant juvenile status * * ** under 8 U.S.C. § 1101(a)(27)(J) * * *." Section 14-1-5.2(a), as enacted by P.L. 2025, ch. 383, § 2; P.L. 2025, ch. 385, § 2 (emphasis added).

The General Assembly has also decreed that:

> "The [F]amily [C]ourt shall have original or continuing jurisdiction to make the findings set forth in subsection (a) of this section for any petitioner *who is under the age of*

- 8 -

*twenty-one (21) at the time of filing, regardless of whether the petitioner has reached the age of eighteen (18) before the court issues its findings.*" Section 14-1-5.2(c), as enacted by P.L. 2025, ch. 383, § 2; P.L. 2025, ch. 385, § 2 (emphasis added).

And, unlike the definition of "[c]hild" that was effective on March 13, 2024, the statutory amendment provides that "[f]or purposes of this section, the term 'child' shall include any unmarried person under twenty-one (21) years of age who files a petition for relief under this section." Section 14-1-5.2(b), as enacted by P.L. 2025, ch. 383, § 2; P.L. 2025, ch. 385, § 2; *see also* § 14-1-3(3), as amended by P.L. 2025, ch. 383, § 1; P.L. 2025, ch. 385, § 1. Whether this amendment applies to DDH is an issue that is not before this Court, and therefore we take no position on that question. Nonetheless it suffices for our present purposes that the General Assembly's wisdom in expanding the jurisdiction of the Family Court under certain circumstances conflicts with Rodriguez's argument that this Court should construe the statutory framework in place on March 13, 2024, to apply to DDH.[3]

---

[3] Rodriguez suggested during oral argument that we should apply G.L. 1956 § 14-1-5.2(b), as recently enacted, in this appeal, although she failed to articulate or develop this argument in the statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure. Notably, Rodriguez filed her Rule 12A statement after the effective date of the amendments. Accordingly, it is well settled that such an argument is waived. *See Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018) ("[S]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.") (quoting *Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1130 (R.I. 2011)).

Finally, Rodriguez contends that the Family Court erred when it failed to assert jurisdiction and issue an order on March 13, 2024, *nunc pro tunc* to February 12, 2024. This argument is without merit. As this Court has noted, "[t]he power to grant a *nunc pro tunc* order * * * is an inherent power whereby the trial court may, on motion or *sua sponte*, correct or amend the record in a civil case 'where the record contains an incorrect entry or fails to record a substantial occurrence in the proceeding.'" *DeCarli v. Webber*, 784 A.2d 288, 290 (R.I. 2001) (quoting 20 Am. Jur. 2d *Courts* § 29 (2000)). Here, the Family Court did not issue a decree requiring an amendment or correction. Instead, on March 13, 2024—after DDH turned eighteen years of age—Rodriguez invited the Family Court to issue a decree on the merits, and then enter the order *nunc pro tunc*, *viz.*, retroactively, to February 12, 2024, the date the petition was filed and before DDH turned eighteen years old. Rodriguez provides no compelling authority for this unwarranted expansion of the Family Court's jurisdiction, and we reject it.

**Conclusion**

For the reasons stated, the order of the Family Court is affirmed. The papers in this case are remanded to the Family Court.

- 10 -



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re DDH. |
| **Case Number** | No. 2025-156-Appeal. (PJ 24-746) |
| **Date Opinion Filed** | March 25, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Chief Justice Michael B. Forte |
| **Attorney(s) on Appeal** | For Petitioner: Clovis C. Gregor |